## THE REPUBLIC NO. 5.

## In re JAKOBSON & PETERSON, Inc., et al.

### No. 16155.

District Court, E. D. New York.

April 20, 1942.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for petitioners.

Macklin, Brown, Lenahan & Speer, of New York City (Paul Speer, of New York City, of counsel), for damage-claimant Martin Marine Transp. Co., Inc.

GALSTON, District Judge.

On December 16, 1940 the motor tug Republic No. 5, with a loaded tank barge, was bound in the vicinity of Hell Gate eastward to Whitestone, Long Island. At the same time the steam tug Mars, with a light barge Manor on her port side and a light barge Winsor on her starboard side, was heading westward from the vicinity of the New York, New Haven & Hartford bridge. Both tows were proceeding through Hell Gate and came into collision. The collision is variously placed by the respective parties as somewhere between the railroad bridge and Triborough Bridge, spanning Hell Gate. On the whole I think the testimony of the witnesses for the petitioners is more persuasive and conclude that the collision occurred nearer Negro Point than the captain of the Mars was willing to concede, slightly east of Triborough Bridge.

That proper navigation required the Mars and her tow, on sighting an eastbound tow in the vicinity of Hallett's Point and Negro Point, to stop her engines at the railroad bridge in order to give the eastbound tow an opportunity to round Negro Point and reach the slacker waters before proceeding on its way to the railroad bridge, was admitted even by Smith, the claimant's expert witness. The captain of the Mars conceded that, but kept coming on.

Another fault ascribable to the Mars was the failure of her lookout to notify the pilot when he first observed the lights of the oncoming Republic tow, for apparently the Mars did not sound her one blast whistle until three or four minutes after such lookout had seen and failed to report the approach of the Republic tow.

The sole fault chargeable to the Republic is that she took a sheer after passing Negro Point, which, it is asserted, could have been avoided had the Republic been under control. The set of the tide is such at Negro Point that vessels that are eastbound and round the point, subject their sterns to the full force of the tide, which would tend to set the stern towards the Astoria side and the bow towards Ward's Island. This is exactly what happened on the night of the collision and the effort to check the forward motion of the Republic was not successful because the time was too short.

The claim that the Republic violated the narrow channel rule must be examined in the circumstances of the specific location and the nature and set of the tide. To follow the rule blindly when it was not both safe and practicable would be to invite disaster. The particular situation is described in The Authentic, 2 Cir., 90 F.2d 437, 438, where it was said: "Conversely, an east bound vessel must cross the tide to reach the left side of the channel between Mill Rock and Hallett's Point, and make for Negro Point, which she must keep close aboard as she passes, for otherwise the tide coming in between Hog Back and Mill Rock and making strong towards the Astoria shore, will carry her over on to the Scaly Rocks." See, also, The Komiles, D.C., 35 F.Supp. 194.

Both tows were apparently properly lighted. There is contradiction concerning the signals given. The Mars claims to have given a bend signal at some point east of the railroad bridge, and a single blast after leaving the railroad bridge. It is admitted by the petitioner that the Mars did sound a single blast, which invited a port to port passage of the two tows. However, the master of the Republic responded with a three blast or danger signal and gave four bells, ordering his engines to go full speed astern, for in the relative positions of the two tows at the time, it would have been impossible for the tows to pass port to port.

At the conclusion of the trial I stated that the petitioner had made out a case for limitation, for at the time of leaving on her trip to Whitestone, the tug was properly manned and equipped and had the necessary complement of officers and seamen aboard, and was in all respects seaworthy.

I now find in addition that the petitioner is also free from liability. Accordingly the petition will be sustained on all grounds. The petitioner may have a decree accordingly.

Findings of fact and conclusions of law in conformity with the foregoing opinion will be filed concurrently herewith.